IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                            No. 13-20290-JTF-dkv

MICHAEL A. LILLEY,

    Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
FOR CHANGE OF VENUE

_____

On July 31, 2014, the grand jury returned a fourteen-count superseding indictment charging the defendant, Michael A. Lilley ("Lilley"), with sex trafficking of minors in violation of 18 U.S.C. § 1591, conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594, sexual exploitation of minors in violation of 18 U.S.C. § 2251(a),(e), distribution of child pornography in violation of 2252(a)(2), and possession of child pornography in violation of § 2252(a)(4)(B). (Superseding Indictment, ECF No. 62.) These charges arise out of an investigation by the Federal Bureau of Investigation, Human Trafficking Division in Memphis, Tennessee, which led to the search of Lilley's home on a search warrant, and his arrest on September 3, 2013.

Now before the court is Lilley's October 14, 2014 motion for change of venue due to pretrial publicity. (Def.'s Mot. to

Change Venue, ECF No. 84.)    The government filed a response on October 15, 2014.  (Gov't's Resp., ECF No. 85.)    The motion was referred to the United States Magistrate Judge for a report and recommendation.  (ECF No. 87.)

Pursuant to the reference, the court held an evidentiary hearing on November 5, 2014.  At the hearing, Lilley introduced into evidence two exhibits: (1) a DVD that includes eleven broadcasts by local television stations covering Lilley's arrest and investigation, (Ex. 1); and (2) two issues of the Millington Star, dated September 12, 2013 and October 3, 2013, and one issue of the Memphis Flyer dated January 9-15, 2014, (Ex. 2). No witnesses were called at this hearing.

After careful consideration of the statements of counsel, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion for a change of venue be denied.

## I.    PROPOSED FINDINGS OF FACT

Following Lilley's arrest, multiple local television channels broadcasted various news segments that mentioned details of the investigation, as declared in Lilley's criminal complaint and sworn affidavit of arrest, and included comments from concerned citizens.  (*See* Ex. 1.)    One of the persons interviewed stated that Lilley "should be hung up by his thumbs

on public display." (*Id.*)    Other interviewees commented "sin, sin, sin," and "America has lost its morals."  (*Id.*)

Lilley's arrest was also covered by the electronic media, (*See* Def.'s Mot. to Change Venue 4-40, ECF No. 84), and the print media, (Ex. 2).  All of the articles recite facts of the case as stated in Lilley's criminal complaint and the sworn affidavit filed with the complaint.  Notably, many of the articles provide a statement by the U.S. Attorney Edward L. Stanton, III, who commented: "The activities alleged in the sworn complaint, if proven true, are reprehensible."  (*See* Def.'s Mot. to Change Venue 4-40, ECF No. 84.)  Further, both the September 12, 2013 and the October 3, 2013 articles by the Millington Star conclude by stating that "[t]he charges and allegations contained in the criminal complaint and the affidavit are merely accusations, and the defendant is considered innocent unless and until proven guilty."  (Ex. 2.) The television broadcasts, the electronic articles, and the print articles were published before October 5, 2013,[1] with the exception of the Memphis Flyer article, which was published on January 9-15, 2014 and references Lilley's indictment in three sentences.  (*Id.*)

## II.  PROPOSED CONCLUSIONS OF LAW

---

[1]The parties stipulated at the hearing that none of the television news segments included in Exhibit 1 occurred after October 5, 2013.

Lilley asserts that the pretrial publicity he received has tainted the jury pool and will prejudice his trial. (*Id.* at 1–2.) In response, the government argues the news coverage in the instant case is not so extensive as to merit presumptive prejudice. (Gov't's Resp., ECF No. 85.) In *Skilling v. United States*, 561 U.S. 358 (2010), the Supreme Court stated that a defendant may request transfer of his proceeding to another district "if extraordinary local prejudice will prevent a fair trial [, which is] a 'basic requirement of due process.'" *Skilling*, 561 U.S. at 378 (citing *In re Murchison,* 349 U.S. 133, 136 (1955)); *see also United States v. Sypher*, 684 F.3d 622, 627 (6th Cir. 2012). The Supreme Court in *Skilling* considered three factors to determine the existence of prejudice: (1) the size and characteristic of the community in which the crime occurred; (2) the nature of the news stories about the defendant; and (3) the lapse of time between the media attention and the trial. *Id.* at 382–83.

Juror exposure to news accounts of the crime alone does not presumptively deprive the defendant of due process. *Skilling*, 561 U.S. at 380 (citing *Murphy v. Florida*, 421 U.S. 794, 798 (1975); *Sypher*, 684 F.3d at 627. "Prominence does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance." *Skilling*, 561 U.S. at 381 (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). A presumption of prejudice

"attends only the extreme case." *Id.* Accordingly, publicity has been found to be inherently prejudicial when "'the influence of the news media . . . pervaded the proceedings' to the point that the trial was 'conducted in a circus atmosphere.'" *United States v. Jamieson*, 427 F.3d 394, 413 (6th Cir. 2005)(quoting *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975)). Coverage that is "primarily fact-based . . . and 'consists of straight news stories rather than invidious articles'" does not constitute prejudice. *United States v. Poulsen*, 655 F.3d 492, 507 (6th Cir. 2011)(citing *DeLisle v. Rivers*, 161 F.3d 370, 395 (6th Cir. 1998)).

Lilley argues that a trial in this district would prejudice him because Millington — the community in which the crime occurred — has a population of 11,107 people. However, the jury pool in this case is not limited to the population of Millington, but it includes all counties in the Western District of Tennessee — Shelby, Fayette, Tipton, and Lauderdale. The city of Memphis in Shelby County alone has a population of 653,450 as reported in the 2013 census. (*See* Def.'s Mot. to Change Venue, ECF No. 84.) Given the large pool of potential jurors, "the suggestion that 12 impartial individuals could not be empaneled is hard to sustain." *Skilling*, 561 U.S. at 382; *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1044

5

(1991)(stating that there is a reduced likelihood of prejudice where venue was drawn from a pool of over 600,000 individuals).

Further, the publicity surrounding Lilley's case does not rise to the level of "circus" atmosphere. The media's treatment of the case was not "unduly one-sided or unfair." *Jamieson*, 427 F.3d at 413. The evidence of the coverage in this case was primarily fact-based and consisted of straight news stories. All of the news coverage was based on facts as stated in Lilley's criminal complaint, the sworn affidavit filed with the complaint, and his indictment. While there were some negative remarks from the people interviewed, those remarks are not so inflammatory "as to elevate them to the level of presumed prejudice." *Id*. Further, the media coverage is not so pervasive as to prejudice the proceeding. There has been no media coverage after October 5, 2013, with the exception of the three sentences regarding Lilley's indictment published in the January 9-15, 2014 issue of the Memphis Flyer.

Lastly, at the hearing Lilley argued that he was also prejudiced because a link to his criminal complaint was published on the website of channel Fox 13. The court finds that this action does not prejudice Lilley because the public is already able to review publicly-filed court records that are not filed under seal. *See Sypher*, 684 F.3d at 627 (holding that the defendant was not entitled to new trial on the basis that the

district court had created Internet website that allowed public access to district court's docket during trial).

As the government points out, in the absence of presumptive prejudice, Lilley's concerns regarding potential prejudice can be resolved during *voir dire*, which is the "primary tool for discerning actual prejudice." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). Accordingly, Lilley has not demonstrated the existence of any factors that would create a presumption of prejudice and would deprive him of due process.

## III. RECOMMENDATION

For the reasons expressed above, it is recommended that Lilley's motion for a change of venue be denied.

Respectfully submitted this 6th day of November, 2014.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.